Good morning, Your Honor. Good morning. My name is William Cohan, and I have the honor to represent Dr. Robert F. Sterner, Jr. This is a case about whether law enforcement officers can flout the authority of this court's final judgments and circumvent them by pretext. I do want to say at the outset that I'd like to reserve five minutes, half of my time, for rebuttal, if I may. There was a decision in 2002 that this Court is very well familiar with, I'm sure. That was a decision that protected physicians such as Dr. Sterner from retaliation for being willing to do what doctors are supposed to do. Counsel, here's my problem with your side of the case, and maybe you can help me out. In this instance, informants who appeared to know whereof they spoke told the authorities that your client had been improperly reporting financial matters and exhibiting very erratic behavior and potentially abusing drugs, all of which to a reasonable person would seem potentially indicative of tax fraud. Why wouldn't any reasonable governmental official follow up on that? Well, I have to back up because I can't agree with your characterization there, which is to say one person contacted the DEA. All she said was that she had seen Dr. Sterner smoking marijuana twice. She offered nothing further until prompted. The information that she provided was false on its face. Now, how is it false on its face? Well, first of all, this informant admitted that she hadn't even worked for the doctor except for a six-week period, during which six-week period she would have not been in any position to observe anything to do with his income tax report. That's the first problem. The second problem is that a normal, healthy male doesn't benefit from testosterone injections, and it would have been very easy for a DEA agent or anyone to have learned that fact. So the contention that she admitted she never observed any of these things herself. This is the one and only informant. There was a second terminated employee whose deposition I took, and all this is in the record, who conceded that he claimed that he had seen Dr. Sterner inject himself once with human growth hormone. The doctor denies this. There's no evidence to support it. But the question is not whether the person was ultimately correct, but whether the response of law enforcement officials was appropriate at the time. It's a little bit like any reasonable suspicion question. The person may or may not turn out to have committed any crime, which seems to be the case here. But that doesn't mean that law enforcement is improper in checking it out, investigating. That's just the problem. They didn't check. They deliberately did not check out and establish the falsity of things that were easily determined to have been false. For example, the one former employee who had been there for three years, Kristen Stafford, whose deposition is also in the record, was never even asked, and to me this is the most damning piece of evidence that proves that Special Agent Sussan knew very well that there was no validity to the claim that she nevertheless certified her penalty of perjury. It was true. She never asked Kristen Stafford anything about whether Dr. Sterner had engaged in any activity to conceal his receipt of cash or any other remuneration, whereas she was an employee who actually was in a position to observe. And when I asked her about this, she said no. There was no such indication. And even more telling, Special Agent Sussan didn't even ask the question. Why didn't she ask the question? Because she knew the answer was going to defeat the claim she wanted to make. She wanted an excuse to raid the doctor's offices, his home, and this was what was done. And this was the thinnest and most transparent pretext. You say reasonable, and I say reasonable. There was nothing reasonable about the manner in which this so-called investigation was conducted. In fact, the law enforcement agents admitted that they simply put down double hearsay, and that's what they asked for was double hearsay. Not any facts. There weren't any facts to support a single one of these accusations. And all one had to do was ask the obvious questions. Brasich, who got the phone call, which the only accusation in that phone call was that Dr. Sterner had smoked cannabis on two occasions. Well, now he decided that there was no reason for the DEA to investigate, and he thought that perhaps there was something that the Internal Revenue Service might be interested in, but certainly not the DEA. Isn't that correct? Well, that's partially correct. He should have, given what Your Honor just said, which was accurate as far as it went, referred the matter to the IRS, but he didn't refer it. Instead, he demanded, really, he commanded this informant to come into his office, even though there was no purpose legitimately to come to his office, and to draw a search warrant on him. Now, I ask you, why would he be having someone draw a search warrant on him when he had no basis even to investigate? He was the one who implanted the idea of cash payments, which the informant, who was a trained paralegal, admitted, well, if I thought there had been any kind of tax misconduct, I would have contacted the IRS. She didn't contact the IRS because she had no basis whatsoever for the accusations that were imputed to her, which came, and this is shown in the report by Brasich himself. When asked, the informant said, gee, he might not have reported all of his cash. She had no knowledge. There were no reports made to the IRS during the period of time she was there, and she had no part in any financial activities for the doctor. And the special agent had all the information in her possession, which disproved what she said in the search warrant that day. I mean, if we're just going to allow law enforcement people to circumvent the rulings of the court by these ridiculous accusations, which, again, if they were reasonable, but they're not. They will not withstand the most basic scrutiny. All you had to do was ask the next question. Did you have any observation? Did you have any opportunity to observe any of this? No. I'm just passing on rumors and saying what I think the agents want me to say. To retaliate against the man who fired me. That's all we have. Did the doctor admit to smoking marijuana? No, he did not. There's no evidence that he did. But even if he had, what, if anything, would that have to do with tax fraud? No. What did you say? I said, even if he had, how would that be evidence of tax fraud, which was the basis for the search warrant? I just asked you a question, and you said no. That's right. You don't have to say it anymore. Well, I'd like to reserve my time if I might, if we'd like. Okay. Good morning, Your Honors. Gretchen Wolfinger for Apley IRS Agent DuSant. I will be speaking for four minutes. Martin Hagen, who is representing the California State Defendants, will be speaking for four minutes, and Catherine Hancock, representing the DEA, will be speaking for two minutes. I believe that in response to representations made by opposing counsel, I will need to discuss matters that are under seal. So what does that mean? There is information in our briefs and in the excerpts of record that is not on the public record. Well, I think as long as you don't name the informants, I don't think there's anything else that is confidential. I believe in response to a representation made by Mr. Cohan, I will need to respond with someone's name. All right. Do you want me to warn you when that will occur? Will the courtroom be clear? No, we're not going to clear the courtroom. I don't think so. Go ahead. Make your argument. Dr. Streeter relies on Conant for the proposition that this was a retaliatory investigation. However, as this Court well knows, Conant was to prohibit investigations of doctors solely for medical marijuana advice or prescriptions. It was not designed and not intended to shield a legitimate law enforcement investigation, which is exactly what we have here. We had a routine tax investigation that would have been conducted regardless of what kind of doctor Dr. Streeter was, what his patient load was. There were allegations of tax evasion that he was cash scanning, and I would note that those allegations were unsolicited and did not arise with the IRS. The IRS got that information from a referral from DEA, and it was not Agent Toussaint who initiated the investigation, but her supervisor tasked her to investigate the allegations. She did so, and at every step of her investigation, she consulted with both her superiors at the IRS and with DOJ attorneys assigned to the criminal case, including in the preparation of the search warrant. She discussed with her superiors at IRS and DOJ the need for a warrant. She prepared the application in consultation with the DOJ attorney, and she accompanied the DOJ attorney to the magistrate to obtain the warrant. And the magistrate did, in fact, find probable cause, and under these circumstances, this finding of probable cause has high probative value that the investigation was, in fact, not retaliatory. With regard to the search warrant affidavit, there were allegations of cash skimming, that is, that Dr. Sterner was not reporting cash payments he received. And the search warrant affidavit establishes probable cause for a search of the locations to obtain further financial information from Dr. Sterner. In fact, what Agent Toussaint did was she did corroborate the allegations with witnesses and through other sources, such as her review of the bank records, and it's clear that she talked to people to obtain the basic facts about the procedures for handling cash in Dr. Sterner's office. She did not ask the witnesses to make the ultimate determination of whether tax evasion was, in fact, occurring, because that was outside their area of expertise. That was her area of expertise. And her warrant established probable cause so that she could get further financial information to continue to conduct her investigation to determine if evasion was, in fact, occurring. With regard to qualified immunity, if this Court finds that there have been constitutional violations, Agent Toussaint is entitled to immunity because she did not act knowingly and intentionally putting false statements or alleged misrepresentations into the search warrant. In addition, there's no evidence here of conspiracy. It's clear that the agencies acted independently in their investigation of Dr. Sterner within their areas of expertise. They did not consult or influence each other. And as a result of the search warrant, no information was provided by Agent Toussaint to other investigative agencies. Thank you. Thank you. Good day, Police Court. My name is Martin Hagen from the California Attorney General's Office, and I represent the individual defendants, Tamela Carew and David Herrick, and the two state defendants, Patricia Stillwell and Nancy Edwards. The individual and state defendants request this Court a firm summary judgment for the following reasons. Number one, Ms. Carew and Mr. Herrick were not state actors, and thus they are not subject to liability under Section 1983. Secondly, there is no genuine issue of material fact regarding the plaintiff's claim of a conspiracy to violate his First Amendment rights based on the strong evidence of probable cause in learning the Medical Board's investigation and evaluation of Dr. Sterner. Further, there's problems with causation in regards to the Medical Board's case based on the different layers of decision-making that were taking place. Third, the state defendants are entitled to qualified immunity under the facts of this case. Turning to the individual defendants, this Court is well aware there's a strong presumption that private individuals' conduct is not actionable under Section 1983. The only way to get around this is, in this particular case, the joint action standard, which will be satisfied if there's evidence of a conspiracy or that- Yeah, that's the Ku Klux Klan statute. Yes, Your Honor. It also is like the Phelps-Dodge case where they discussed that, the Ninth Circuit discussed that in detail, where the individuals and the state defendants are essentially in a symbiotic relationship. In order to show conspiracy, there has to be concrete evidence of an agreement or meeting of the minds to violate constitutional rights, and there has to be a substantial degree of cooperation of the joint action requirement. I think the facts of this case show that we don't have that substantial involvement between the individual defendants and the state defendants. Indeed, the facts show that Ms. Carew's involvement was limited to calling the DEA on one occasion and then making herself available for three subsequent interviews with all the different investigators. Mr. Herrick's involvement was even more limited. He had two contacts, one with the Medical Board and one with the IRS. These limited contacts with law enforcement are insufficient as a matter of law to establish a conspiracy or the substantial degree of cooperation that's required to convert them from private individuals into state actors. Now I'd like to direct the Court's attention to the state defendants, and I believe the summary judgment should be affirmed as to the state defendants because plaintiff has failed to show any tribal issue material facts that these defendants conspired to violate his First Amendment rights, and the state defendants are entitled to qualified immunity. Well, aren't they here representing the state defendants? Aren't who representing the state defendants? Aren't they represented here today? He's representing them. Yes, I'm representing the two state defendants, Ms. Stillwell, who is the investigator, Your Honor, and Nancy Edwards, who was the supervising investigator. All right, because this is a... All right, you're up third. Okay. Okay. Yeah, all right, let's see. We've got two DOJs here. That's correct. That's okay. Go ahead. Thank you, Your Honor. I think even if the Court were to apply the Hartman analysis, which did require as an element a lack of probable cause, or if the Court were to decide the rationale in the decision that was drafted by Judge Graber and Dietrich, I think the results are the same, that the strong evidence of probable cause in this case would warrant granting summary judgment in this particular case. Directing my attention... Oh, and I want to go back. There's certainly, in this record, tons of evidence about the fact that various items that were there, they were corroborated by the witnesses, the use of marijuana, and the other things that were set forth in the investigative report. Lastly, I believe qualified immunity would apply in this case because there's been no evidence of a constitutional violation, and certainly Dr. Sterner has failed to identify the violation but clearly established... Don't you want to leave two minutes? Yes, Your Honor. Thank you. All right. Well, see, I had you down here at number two. But no, he's number three. Oh, you're number three. I thought maybe you were Gretchen. This is Gretchen. May it please the Court, Catherine Hancock on behalf of Diversion Investigator Robert Brasich. Please, only allegations here against Diversion Investigator Brasich stem from defendants' interview with the informant taking down her allegations of potential misconduct in his report and then referring those allegations of potential misconduct to the IRS and the California Medical Board. No reasonable official in those circumstances could have concluded that that action, taking down the allegations and referring those allegations, would have been unconstitutional, particularly since that action of referring those allegations was consistent both with DEA policy and was directed by Brasich's supervisors. If anything, if there's any case where an individual is entitled to qualified immunity, Your Honors, it's this one, if there are no questions. And in all the cases, nothing, you didn't go forward on these cases with the defendant? That's correct. Brasich and the DEA concluded that there was not enough to go forward for an investigation from the DEA's perspective. Yeah. Thank you, Your Honors. We would ask this Court to affirm the judgment. Thank you. You've got a minute and 42 seconds. Thank you, Your Honor. I'll make it a minute and 42 seconds. All right. Well, I heard Ms. Wolfinger say that this is a routine tax investigation. I'm just a timekeeper. I call balls and strikes. It's fine. I'm just doing my job, you know. As you say, Your Honor, I've seen a few opinions you've written, too, though. So I think you do more than just keep track of time. But I wanted to just address a couple of remarks. Go ahead. The defendants here got together and fabricated a bunch of lies. That's the claim we're making. It's the claim, but where is the evidence? The record's replete with the evidence, Your Honor. Every dollar was accounted for. The special agent lied in her affidavit in addition to concocting a misleading table. She had all of the information that showed that all of the doctor's receipts were, in fact, reported. There wasn't a shred of evidence suggesting otherwise, and she had it all, and she misrepresented it, and she concocted this misleading chart. And Ms. Wolfinger says this is a routine tax investigation? Routine tax investigations don't result in searches and seizures, as Your Honor's well know. Only a tiny fraction, less than 1% of the tax investigations, are criminal tax investigations. And there was no justification for invading this doctor's home and especially seizing all of his patient records. But after all those records were seized and all of them were reviewed, it showed he reported every dollar, and there was nothing done by him. There was no testimony to the contrary that all of this wasn't accurately recorded. The idea of cash giving originated with D.E. agent Brasich. He was the one who induced T.C. to agree, oh, yes, I guess he was reporting cash, even though they knew. She had no knowledge of what he was reporting. With respect to Mr. Herrick, he went along with some ridiculous fictions about the doctor's attack dog, a 10-pound dog that was 12 years old. It was supposedly attacking patients and trained to lick the blood. You don't really need to train dogs to lick things. But this was the source of these so-called facts. The only credible witness that they interviewed, in any degree, said that it was Herrick who created the problems that led her to quit, not Dr. Sterner. And she affirmed that there was nothing to suggest that he wasn't reporting every dollar which came into his office. It was all recorded in two places. And not a suggestion that it wasn't reported by the statute of truths anywhere. So, probable cause, cash giving, nothing but lies and half-truths that were used to get around this court's ordinary economy. To get around this court's order in Conant that said you can't go after physicians who honestly discuss with their patients the potential medical benefits of cannabis. And indeed, the potential medical benefits of cannabis may be far greater than we're allowed to learn Why would a doctor take the risk unless he's a real crusader for a patient's health? Thank you very much. Did the doctor get a letter from your agency exonerating him? Your Honor, Martin, I've talked to him before. Yes, he did receive a letter. What did it tell him? What the letter gave him was the results of the actual report that had been done by Dr. Carroll. Where Dr. Carroll opined, in his opinion, that Dr. Sterner was a fit-to-practice medicine. It was what? Fit-to-practice medicine. Yeah, that's all he got? That's what I'm aware of, Your Honor. Well, I'm not sure if your agency would say more than that to the doctor. Well, Your Honor, I think what the agency did was they drafted a letter from the medical board that enclosed the report where Dr. Carroll concluded that he was safe to practice medicine. But doesn't the IRS apologize? Absolutely not. I didn't ask you. Your Honor, Gretchen Wolfinger for Agent Toussaint. In the record, in this case, there is a letter from the Department of Justice to Dr. Cohen indicating that the grand jury investigation was terminated. However, subsequent to that letter, and it does not appear in the record, but I have a copy here, the prosecutor notified Mr. Cohen in a letter with regard to pleadings made in the district court case here under review that contrary This is not part of the record. No, but let me see that if you don't mind. Certainly. May I read it into the record? Then I can provide a copy to everyone here. Well, you read all this other stuff into the record. Just let me see it, would you? Yes, it says that it was Just let me see it. Yes, Your Honor. Your Honor. Well, that's just a prosecutor. I haven't looked at it closely, but that's just a prosecutor that says things after it's all over with. And that's what they do. That's what they do to justify all their activities. I would let the letter speak for itself, Your Honor. Well, that's what it tells me. I mean, if you go after somebody and you drop this, there ought to be something a little better than that to send to people. You know, this isn't the first case I've ever sat on where there were mass searches in doctors' offices and all that. Thank you, Your Honor. You know, there's a lot of abuse that's going on. And there is, it ought to be admitted. And we need to correct it. I'm, you know, I haven't looked at all this stuff you've got in your files, but these are serious things. Yes. And power should be used carefully. And we believe that in this case. Well, I don't know. I don't know. And there still seems to be a lot of hostility among the, what I hear here today. And that's all. Thank you, Your Honor. Yeah. All right. We'll go to the next matter. We're going to take a short break. We'll recess. All rise.
judges: Fletcher B. , Pregerson, Graber